IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COOLAB FOODS, LLC, ) | |
| ) | |
| Plaintiff, ) | No. 22 C 3355 |
| ) | |
| v. ) | Magistrate Judge Gabriel A. Fuentes |
| ) | |
| CREAMALICIOUS, INC., and ) | |
| ELIZABETH ROGERS, ) | |
| ) | |
| Defendants/Counterclaimants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff CooLab Foods, LLC ("CooLab") has sued Creamalicious, Inc. and its principal, Elizabeth Rogers (collectively, "Creamalicious"),[1] for breach of a purchase agreement and a subsequent settlement agreement; in the alternative, CooLab alleges unjust enrichment and "promissory fraud." (D.E. 6: Amended Compl. ("AC"), ¶¶ 44-74.) In answer to CooLab's Amended Complaint, Creamalicious asserts affirmative defenses and a counterclaim. (D.E. 18: Answer, Affirm. Defenses and Counterclaim, pp. 18-38.) Currently before the Court is CooLab's Rule 12(b)(6) motion to dismiss Creamalicious' Counterclaim and strike its affirmative defenses. (D.E. 49: Mot. to Dismiss, ¶¶ 3-5.)

**I.      Legal Standard**

"To survive a motion to dismiss, a plaintiff need allege 'only enough facts to state a claim to relief that is plausible on its face.'" *Barwin v. Vill. of Oak Park*, 54 F.4th 443, 453 (7th Cir. 2022), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim satisfies that criterion when 'the plaintiff pleads factual content that allows the court to draw the reasonable

---

[1] Plaintiff initially named Richard White, Roger Cunningham and James Christensen as defendants as well, but Plaintiff has voluntarily dismissed those parties from the lawsuit. (D.E. 46.)

inference that the defendant is liable for the misconduct alleged.'" *Barwin*, 54 F.4th at 453, quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court "accept[s] as true all well-pled facts alleged in the complaint," *Barwin*, 54 F.4th at 453, and "construes all allegations and any reasonable inferences in the light most favorable to the [nonmoving party]." *Jauquet v. Green Bay Area Cath. Educ., Inc.*, 996 F.3d 802, 807 (7th Cir. 2021) (internal citations omitted).

## II. Well-Pleaded Facts in Creamalicious' Counterclaim

Creamalicious alleges that CooLab agreed to manufacture and supply Creamalicious ice cream using "designated suppliers for designated ingredients," "in strict compliance with the proprietary recipe and ingredient list provided by Creamalicious," and to package the ice cream into a finished product by "fill[ing] the cups with [the] finished product and attach[ing] and affix[ing] the lids and safety seals." (Countercl. ¶¶ 12, 20-22.)[2] Creamalicious also alleges that CooLab agreed to manufacture a specified number of pints of Creamalicious ice cream on a weekly basis (the "Capacity Requirement") and to supply the finished product to market in accordance with Creamalicious' purchase orders. (*Id.* ¶¶ 17-18.) Creamalicious alleges that it entered into this agreement (the "Agreement") with CooLab in or about April 2022, the same month Creamalicious began issuing purchase orders to CooLab. (*Id.* ¶¶ 16, 24.)

Creamalicious alleges that CooLab did not fulfill the purchase orders on May 5 and May 9, 2022, and "[t]hroughout May and June," and that CooLab did not meet the Capacity Requirement. (*Id.* ¶¶ 17, 25-27.) In addition, Creamalicious alleges that "[o]n several occasions, CooLab manufactured and produced packaging that failed to conform to the standards required by the Agreement," such that CooLab "released a substantial number of [Creamalicious'] Finished Products in May and June of 2022 that did not contain proper safety seals." (*Id.* ¶¶ 28-31.)

---

[2] Both parties acknowledge that they entered into an agreement, but neither party has attached a copy of it to any of their pleadings.

Creamalicious alleges that CooLab also released products to market that did not conform to the manufacturing specifications in the Agreement because they omitted required ingredients, such as omitting pecans from Creamalicious' "Thick As Thieves Pecan Pie" product in at least three "Lot[s]" that were sent to grocery retailers in 29 states. (*Id*. ¶¶ 32-34.)

Creamalicious also alleges that CooLab "agent" Glennise Humphry represented during a call on June 6, 2022, that "CooLab conducted regular tests on the production line and that they were quality controlled checked every twenty (20) minutes during Creamalicious' production runs to verify that the finished products had a correct weight as a quality control measure;" Creamalicious alleges that these representations were "false, misleading, and calculated to misguide and deceive Creamalicious." (*Id*. ¶¶ 35-36.) In addition, Creamalicious alleges that on or about June 10, 2022, CooLab delivered a shipment of ice cream products to a Creamalicious replacement manufacturer, but that "the agreed upon ingredients and products amounts were not used," causing "the planned production to be cancelled [and] causing loss and damage to Creamalicious and the Replacement Manufacturer." (*Id*. ¶ 40.) Creamalicious asserts it "was in compliance with its obligations under the Agreement at all times that the Agreement was complied with and not breached by CooLab." (*Id*. ¶ 43.) Creamalicious alleges it suffered "lost sales, lost business, injury to reputation and other injury" in the amount of at least $6 million. (*Id*. ¶ 44.)

III.    Analysis

    A.    **A "Settlement Agreement" Does Not Bar Creamalicious' Counterclaim.**

In its motion to dismiss, CooLab first argues that it entered into a settlement agreement with Creamalicious which bars Creamalicious' affirmative defenses and counterclaims. (D.E. 50: Mem. at 2.) However, the purported settlement agreement was not attached to CooLab's Amended Complaint and was not mentioned in Creamalicious' Counterclaim. Instead, CooLab attached a

document entitled "settlement agreement and release of claims" to its motion to dismiss Creamalicious' Counterclaim. (D.E. 52.) Under Federal Rule of Civil Procedure 12(d), the Court is "obligated to either not consider the extraneous submissions in ruling on the motion [to dismiss] or to convert the motion to one for summary judgment and provide the parties with an opportunity to submit supplementary materials." *Jacobs v. City of Chicago*, 215 F.3d 758, 765-66 (7th Cir. 2000). The only exception under which a court may consider matters outside the pleadings on a motion to dismiss is when the documents are: "(1) referenced in the plaintiff's complaint, (2) concededly authentic, and (3) central to the plaintiff's claim." *Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022). Federal civil procedure has no equivalent of Section 2-619 of the Illinois Code of Civil Procedure.

For purposes of CooLab's motion to dismiss, the foregoing exception would only apply if the settlement agreement was referenced in and central to Creamalicious' Counterclaim. However, as explained above, Creamalicious' Counterclaim makes no mention of a settlement agreement, and in its answer to CooLab's Amended Complaint, Creamalicious "denie[d] that it entered into a lawful agreement with CooLab entitled Settlement Agreement and Release of Claims" (Ans. ¶ 31), so the exception does not apply. Whether such a settlement agreement exists is thus a matter of disputed factual proof, with each party pleading different facts. Moreover, at this early stage of the litigation, the Court will not convert CooLab's motion into a motion for summary judgment. Accordingly, the Court does not consider the attachment to CooLab's motion to dismiss or the exhibits Creamalicious attached to its opposition brief to be materials the Court is able to consider on a Rule 12 motion to dismiss the Counterclaim. (D.E. 54: Def.'s Opp'n at 7.)

The same Rule 12(b)(6) standards apply to CooLab's motion to strike Creamalicious' affirmative defenses. *See Rosas v. Bd. of Educ. of City of Chicago*, No. 19 C 2778, 2023 WL

4

415183, at *13 (N.D. Ill. Jan. 25, 2023). However, unlike Creamalicious' Counterclaim, which CooLab seeks to dismiss on multiple grounds, the only stated basis for CooLab's motion to strike Creamalicious' affirmative defenses is the purportedly "broad and unambiguous release language" in the settlement agreement. (*See* Mem. at 2-4.) As the Court will not consider the attachment to CooLab's motion at this stage, the Court denies CooLab's motion to strike Creamalicious' affirmative defenses.

### B. The Individual Counts of Creamalicious' Counterclaim

CooLab also argues that Creamalicious' Counterclaim should be dismissed because each count fails to state a claim upon which relief can be granted. Like the parties, the Court applies Illinois substantive law because "when neither party raises a conflict of law issue in a diversity case [such as this one], the federal court simply applies the law of the state in which the federal court sits." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 522 (7th Cir. 2022), quoting *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 587 n.1 (7th Cir. 2012).

#### 1. Count I: Breach of Contract

"Under Illinois law, a plaintiff looking to state a colorable breach of contract claim must allege four elements: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019). CooLab contends that Creamalicious' Counterclaim does not adequately allege the third element for breach of contract, because Creamalicious does not specify the capacity requirement or the provisions of the Agreement that were breached. (Mem. at 4-5.)

This is a close call. Although "federal courts require notice pleading, not fact pleading complete with all the minutiae," *Auto Driveaway Franchise Sys., LLC v. Auto Driveaway*

*Richmond, LLC*, 928 F.3d 670, 675 (7th Cir. 2019), a breach of contract claim "requires an identifiable breach of a contract term." *Sevugan*, 931 F.3d at 614. In Count I of its Counterclaim, Creamalicious alleges that CooLab breached the Agreement because CooLab manufactured and released products that "were defective in that they lacked inclusions and were otherwise nonconforming with the specifications for the Finished Products as required by the Agreement," and that as a result, CooLab "fail[ed] to satisfy the Capacity Requirement for several weeks." (Countercl. ¶¶ 48-49.) However, Creamalicious does not identify the specific terms in the Agreement that CooLab allegedly failed to satisfy. As such, the Counterclaim for breach of contract as it now stands does not state a claim upon which relief can be granted. The Court grants CooLab's motion to dismiss Count I of the Counterclaim and dismisses Count I without prejudice.

### 2. Count II: Breach of Express Warranty

Similarly, CooLab argues that Creamalicious' breach of express warranty claim is deficient because it failed to specify the terms of the alleged warranty or the part of the Agreement that contained the warranty. (Mem. at 5.) The Court agrees. Creamalicious alleged that "[b]y manufacturing and releasing the Finished Products, CooLab expressly warranted that the ice cream and packaging were merchantable and fit for their intended purpose." (Countercl. ¶ 52.) However, an express warranty is not expressed by a party's actions, but by the terms of an agreement. A claim for breach of express warranty "sounds in contract;" it "is imposed by the parties to a contract and ... an action for breach of express warranty is an action ex contractu." *Horne v. Elec. Eel Mfg. Co., Inc.*, 987 F.3d 704, 717 (7th Cir. 2021), quoting *Collins Co., Ltd. v. Carboline Co.*, 125 Ill.2d 498, 532 N.E.2d 834, 838 (1988). Without specifying the terms of the contract that were allegedly breached, Count II in its current form also does not survive the motion to dismiss. The Court grants

CooLab's motion to dismiss Count II of the Counterclaim and dismisses Count II without prejudice.

### 3. Count III: Breach of Implied Warranty of Merchantability

CooLab next argues that Creamalicious fails to state a claim for breach of implied warranty of merchantability "because it fails to allege sufficient facts to establish . . . that the product was not merchantable at the time of sale." (Mem. at 6.) Under the Uniform Commercial Code ("UCC"), codified in Illinois at 810 ILCS 5/2-101 *et seq.*, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 810 ILCS 5/2-314(1). Goods to be merchantable must:

> (a) pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within the description; and (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any.

810 ILCS 5/2-314(2).

Creamalicious adequately alleged that CooLab breached the implied warranty of merchantability; *i.e.*, that its products did not meet the requirements of 810 ILCS 5/2-314(2)(a-f). Creamalicious alleged that the goods CooLab ultimately provided: would not pass without objection in the trade under the description in the Agreement; were not of even kind, quality and quantity within each unit or among all units involved; were not adequately contained, packaged, or labeled properly or safely as the Agreement required; and did not conform to the promises or affirmations of fact made on the container. For example, Creamalicious alleged that CooLab supplied "Thick As Thieves Pecan Pie" ice cream without pecans. (Countercl. ¶¶ 29-34, 39.) These

allegations adequately state a claim that CooLab breached the implied warranty of merchantability. Accordingly, CooLab's motion to dismiss Count III is denied.

### 4. Count IV: Breach of Implied Warranty of Fitness for a Particular Purpose

The UCC (as codified in Illinois) also provides that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose." 810 ILCS 5/2-315. CooLab contends that Creamalicious does not adequately state a claim for breach of this implied warranty because its Counterclaim does not describe "any particular purpose for the product . . . and does not allege that it told [CooLab] of this purpose" or that CooLab "knew of [Creamalicious'] reliance on its skill and judgment." (Mem. at 7.)

The Court agrees with CooLab. "No warranty for a particular purpose is created if the intended use is no different from the ordinary use of the product. A particular purpose differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." *Ali v. Volkswagen Grp. of Am., Inc.*, 559 F. Supp. 3d 723, 735-36 (N.D. Ill. 2021) (internal citations and quotations omitted). For example, a car's ordinary purpose is driving, *see id.*, and the ordinary purpose of ice cream – even "specialty" ice cream – would be eating it. Creamalicious does not allege that it intended (nor conveyed its intention) for its ice cream to be used for any purpose other than to eat. Accordingly, CooLab's motion to dismiss Count IV of the Counterclaim is granted, and Creamalicious' claim for breach of implied warranty of fitness for a particular purpose is dismissed without prejudice.

5. **Count V: Fraud**

To state a claim for common law fraud, Creamalicious "must 'state with particularity the circumstances constituting fraud or mistake.'" *Gandhi v. Sitara Cap. Mgmt., LLC*, 721 F.3d 865, 869 (7th Cir. 2013) (quoting Fed. R. Civ. P. 9(b)). This means Creamalicious must plead "the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated" to Creamalicious. *Id*. at 870 (internal citations and quotations omitted).

CooLab argues that Creamalicious' pleading does not meet the heightened pleading requirements for fraud because it does not detail "what the false statement was and how it was knowingly made." (Mem. at 8.) Creamalicious alleged that:

> In an effort to maintain its business relationship with Creamalicious, CooLab agent Ms. Glennise Humphry represented during a call on June 6, 2022 at approximately 9 a.m. that CooLab conducted regular tests on the production line and that they were quality controlled checked every twenty (20) minutes during Creamalicious' production runs to verify that the finished products had a correct weight as a quality control measure.

(Countercl. ¶ 35.) Creamalicious alleged that these "statements were false, misleading, and calculated to misguide and deceive Creamalicious, and CooLab was aware that such statement were false when they were made." (*Id*. ¶ 36.) These allegations meet the heightened pleading requirements for fraud. CooLab's motion to dismiss Count V of the Counterclaim is thus denied.

6. **Counts VI and VII: Negligence and Negligent Misrepresentation.**

The Court agrees with CooLab that Creamalicious' negligence claims are barred by the *Moorman* doctrine, also called the economic loss doctrine. (Mem. at 8-10.) The *Moorman* doctrine "bars recovery in tort for purely economic losses arising out of a failure to perform contractual obligations." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012), citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 435 N.E.2d 443, 448-49 (1982). The only exception to

the *Moorman* doctrine arises "where a duty arises outside of the contract;" *i.e.*, separate from any duty based on the contract itself, such as a fiduciary duty. *Wigod*, 673 F.3d at 567-68, citing *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 636 N.E.2d 503, 514 (1994), and *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 693 (7th Cir. 2011). In those cases, the *Moorman* doctrine does not prohibit recovery in tort for the negligent breach of that duty. *Id*.

Creamalicious argues that its negligence claims fall within an exception to the *Moorman* doctrine because CooLab, "by virtue of its expertise as a co-packer and manufacturer for hire, is in the business of supplying information to consumers." (Opp'n at 12-13.) But Creamalicious has not alleged that CooLab was in the business of supplying information to consumers, and more importantly, Creamalicious makes no allegations from which this Court could reasonably infer that whatever business CooLab was in, CooLab owed any extra-contractual duty, fiduciary duty, or duty of reasonable care to Creamalicious. "To determine whether the *Moorman* doctrine bars tort claims, the key question is whether the defendant's duty arose by operation of contract or existed independent of the contract." *Wigod*, 673 F.3d at 567-68. Creamalicious' Counterclaim makes clear that any duty CooLab owed to Creamalicious arose out of the Agreement. Consequently, the economic loss doctrine bars Creamalicious' negligence claims. Moreover, contrary to Creamalicious' contentions (Opp'n at 13-15), pleading negligence in the alternative does not save those claims. *See Wigod*, 673 F.3d at 574 (holding that the claimant's negligence claims, which were pleaded in the alternative, were barred by the economic loss doctrine). Accordingly, CooLab's motion to dismiss Counts VI and VII of the Counterclaim is granted, and the negligence claims are dismissed without prejudice.

### 7. Count VIII: Claim for Indemnification

Finally, Creamalicious included a "claim for indemnification," alleging that it "entered into agreements, express and/or implied, wherein CooLab agreed to indemnify and hold Creamalicious harmless . . ." (Countercl. ¶ 82.) The Court agrees with CooLab that Creamalicious' indemnity claim does not satisfy notice pleading requirements. (Mem. at 10.) "The Illinois Supreme Court has forewarned that it 'serves no useful purpose to attempt to analyze or reconcile the numerous cases interpreting indemnity clauses since each individual case depends upon the particular language used and the factual setting of the case.'" *Wilda v. JLG Indus., Inc.*, 470 F. Supp. 3d 770, 784 (N.D. Ill. 2020), quoting *Buenz v. Frontline Transp. Co.*, 227 Ill. 2d 302, 310-11, 882 N.E.2d 525 (2008). However, as with its breach of contract and express warranty claims, Creamalicious fails to specify the terms of the provision under which it claims it is entitled to indemnity. As such, its allegation that it is entitled to indemnification under an express agreement fails to state a claim. Likewise, Creamalicious does not allege from where a purported "implied" agreement to indemnify arose. Accordingly, CooLab's motion to dismiss Count VIII of the Counterclaim is granted, and Creamalicious' claim for indemnification is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, CooLab's Motion to Dismiss Creamalicious' Counterclaim and Strike Affirmative Defenses (D.E. 49) is granted in part and denied in part. The Court grants CooLab's motion to dismiss Counts I, II, IV, VI, VII and VIII of Creamalicious' Counterclaim. The Court dismisses these counts without prejudice, and grants Creamalicious leave to replead. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.") The Court denies CooLab's motion to dismiss Counts III and V of Creamalicious' Counterclaim and denies CooLab's motion to strike Creamalicious' affirmative defenses.

**ENTER:**

_____
**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: April 11, 2023**